SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-08-0164-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2005-007848-001 DT |
| GARY WAYNE SNELLING, | ) |
| | ) |
| Appellant. | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Linda A. Akers, Judge

**CONVICTION AFFIRMED; DEATH SENTENCE VACATED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Criminal Appeals/Capital Litigation Section
          Susanne Bartlett Blomo, Assistant Attorney General
Attorneys for State of Arizona

THOMAS A. GORMAN, ATTORNEY AT LAW                          Sedona
     By   Thomas A. Gorman
Attorney for Gary Wayne Snelling
_____


**P E L A N D E R**, Justice

¶1      Gary Wayne Snelling was convicted of first degree murder and sentenced to death.  We have jurisdiction over this mandatory appeal under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 13-

4031 and 13-4033(A)(1) (2010).[1]

## FACTUAL AND PROCEDURAL BACKGROUND[2]

¶2        On July 14, 1996, Adele Curtis was cleaning a townhouse she owned in Phoenix so it could be rented. The prospective tenant met Curtis at the townhouse around noon, stayed for about two hours, and left through the unlocked front door. She last saw Curtis sitting on the stairs with a drink and sandwich and Curtis's truck parked outside the townhouse.

¶3        Two days later, a police officer responded to a report of an abandoned truck behind a nearby bar. The truck belonged to Curtis. The officer went to the townhouse but received no response to his knock.

¶4        Curtis's family became concerned after not hearing from her. Her niece went to the townhouse but found it locked and Curtis's truck gone. After finding a key, the niece returned to the townhouse on July 18 and discovered Curtis's naked body lying on the upstairs bathroom floor. Curtis had marks on her neck consistent with a ligature. The medical examiner opined that she had died of asphyxia by strangulation.

---

[1]    This opinion cites the current version of statutes, unless otherwise noted.

[2]    Except when conducting our independent review, we view the facts in the light most favorable to sustaining the verdict. *State v. Garza*, 216 Ariz. 56, 61 n.1, 163 P.3d 1006, 1011 n.1 (2007).

When the autopsy was performed on July 19, Curtis's body was in an advanced state of decomposition consistent with her having died three to four days earlier.

¶5 Police collected scrapings of a blood smear on an upstairs bedroom door frame and a blood drop on the bathroom floor near Curtis's body. An electrical cord, cut from a lamp in the upstairs bedroom, was in the upstairs bathroom sink. Fingerprints were found on receipts in the downstairs bathroom; a fingerprint and palm print were on the upstairs bathroom's sink counter. Curtis's partially eaten sandwich and drink were on the stairway landing. On the kitchen counter, police found Curtis's purse without any cash inside and with checks missing from a checkbook. Police also found a discarded beverage can in Curtis's truck.

¶6 Curtis's murder remained unsolved for several years. In 2003, a detective re-opened the investigation and submitted evidence for DNA testing. A DNA profile obtained from the beverage can matched Snelling's profile, which had been obtained in an unrelated matter in 1999. Snelling's profile also matched the profiles obtained from the blood smear and blood drop, and his DNA was likely present on the electrical cord. In addition, Snelling's prints matched the prints found at the townhouse, and he had lived in the same complex as Curtis at the time of the murder.

3

¶7    After his arrest, Snelling was incarcerated in the same jail pod as Jerry Rader and told him about having murdered Curtis. Snelling told Rader that he had watched Curtis cleaning the townhouse after the previous tenants moved out. He informed Rader that he had entered Curtis's townhouse intending to sexually assault her, taken $1,000 from her purse, gone upstairs, cut a cord in case he needed a weapon, surprised her in the bathroom, and choked her to death when she screamed.

¶8    Snelling was indicted for first degree murder (both premeditated and felony) and found guilty. During the aggravation phase of the trial, the jurors found that Snelling had committed the murder in an especially cruel manner, A.R.S. § 13-751(F)(6) (2010), but could not decide whether he had committed the murder in expectation of pecuniary gain, § 13-751(F)(5). The jury also could not reach a unanimous verdict on the appropriate penalty.

¶9    A second jury was impaneled to re-try the penalty phase. After finding no mitigation sufficiently substantial to call for leniency, the second jury determined that Snelling should be sentenced to death.

### ISSUES ON APPEAL

### I.  Prosecutorial Misconduct in the Grand Jury Proceeding

¶10    Snelling claims the grand jury proceeding was tainted by prosecutorial misconduct because the State presented no

4

evidence of the felony murder predicates of sexual assault and attempted sexual assault.[3]  Snelling apparently challenges both the prosecutor's conduct before the grand jury and the sufficiency of evidence for the indictment.

¶11     A defendant alleging prosecutorial misconduct in a grand jury proceeding generally must seek relief from an adverse trial court ruling through special action rather than waiting to raise such issues on appeal.  *See State v. Verive*, 128 Ariz. 570, 574-75, 627 P.2d 721, 725-26 (App. 1981); *see also State v. Gortarez*, 141 Ariz. 254, 258, 686 P.2d 1224, 1228 (1984) (discussing the denial of a motion for a redetermination of probable cause).  "The one exception to this rule is when a defendant has had to stand trial on an indictment which the government knew was based partially on perjured, material testimony."  *Gortarez*, 141 Ariz. at 258, 686 P.2d at 1228. Because Snelling does not identify any false statement or perjured testimony before the grand jury, he is precluded from challenging the prosecutor's conduct during the grand jury proceeding.

¶12     Nor may Snelling challenge on appeal the sufficiency of the evidence presented to the grand jury on the felony murder predicates.  "Courts generally do not concern themselves with

---

[3]    Burglary was also alleged as a predicate offense for felony murder.

5

the evidence underlying a grand jury indictment." *State v. Jessen*, 130 Ariz. 1, 5, 633 P.2d 410, 414 (1981); *see Crimmins v. Superior Court*, 137 Ariz. 39, 42-43, 668 P.2d 882, 885-86 (1983) (a trial court is prohibited from "considering an attack on an indictment based on the nature, weight or sufficiency of the evidence presented to the grand jury"). Moreover, "a conviction precludes review of the finding of probable cause made by a grand jury." *State v. Moody*, 208 Ariz. 424, 440 n.3 ¶ 31, 94 P.3d 1119, 1135 n.3 (2004).

## II.  Qualification of Defense Counsel

¶13      Snelling argues he was denied his right to counsel and due process because the trial court did not expressly determine that a qualified capital defense team had been appointed for him.  He contends the court's failure to comply with Arizona Rules of Criminal Procedure 6.5 and 6.8 was structural error.

¶14      Arizona Rule of Criminal Procedure 6.8(b) sets forth the qualifications for lead and co-counsel in capital cases, and Rule 6.5(a) requires the trial court to enter an order whenever counsel is appointed.  Neither rule, however, mandates the court to make a recorded finding that a capital defendant has been appointed qualified counsel.  To the extent Snelling challenges his counsels' effectiveness, he must raise any such claim in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32.  *State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9, 39

P.3d 525, 527 (2002) (holding that "ineffective assistance of counsel claims are to be brought in Rule 32 proceedings").

**III. Admission of Crime Scene and Autopsy Photographs**

¶15        During the guilt phase, the trial court admitted crime scene and autopsy photographs over Snelling's objection.  We review a trial court's decision to admit photographs for abuse of discretion.  *State v. Anderson*, 210 Ariz. 327, 339 ¶ 39, 111 P.3d 369, 381 (2005).

¶16        "The admissibility of a potentially inflammatory photograph is determined by examining (1) the relevance of the photograph, (2) its tendency to incite or inflame the jury, and (3) the probative value versus potential to cause unfair prejudice."  *State v. Lynch*, ___ P.3d ___, 2010 WL 2485248, at *4 ¶ 30 (Ariz. June 22, 2010) (citation and internal quotation marks omitted).  Photographs may not be admitted "for the sole purpose of inflaming the jury," *State v. Gerlaugh*, 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982), but may be introduced "to show the nature and location of the fatal injury, to help determine the degree or atrociousness of the crime, to corroborate state witnesses, to illustrate or explain testimony, and to corroborate the state's theory of how and why the homicide was committed," *State v. Chapple*, 135 Ariz. 281, 288, 660 P.2d 1208, 1215 (1983).

¶17        Although several photos in this case show skin

slippage and discoloration, "[e]ach photograph conveys different, highly relevant information about the crime." *State v. Rienhardt*, 190 Ariz. 579, 584, 951 P.2d 454, 459 (1997). The photographs provide information about the cause and manner of Curtis's death and her body's state of decomposition, and were used by the medical examiner to explain Curtis's injuries and to assist the jury in understanding the testimony. Therefore, the trial court did not abuse its discretion in admitting the photographs after expressly finding that their probative value was not substantially outweighed by any prejudicial effect. *See* Ariz. R. Evid. 403.

## IV.  Medical Examiner's Testimony

¶18     Snelling contends the medical examiner's testimony in 2007 during the guilt phase was hearsay and violated his confrontation rights because she had not performed Curtis's autopsy in 1996 or authored the autopsy report. We review a trial court's admission of expert testimony for abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 210 ¶ 69, 84 P.3d 456, 475 (2004). "Evidentiary rulings that implicate the Confrontation Clause, however, are reviewed de novo." *State v. Ellison*, 213 Ariz. 116, 129 ¶ 42, 140 P.3d 899, 912 (2006).

¶19     When considering a similar argument in *State v. Smith*, we found that "[e]xpert testimony that discusses reports and opinions of another is admissible . . . if the expert reasonably

relied on these matters in reaching his own conclusion." 215 Ariz. 221, 228 ¶ 23, 159 P.3d 531, 538 (2007).

> Facts or data underlying the testifying expert's opinion are admissible for the limited purpose of showing the basis of that opinion, not to prove the truth of the matter asserted. Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay and does not violate the confrontation clause.

*Id.* at 229 ¶ 26, 159 P.3d at 539 (quoting *State v. Rogovich*, 188 Ariz. 38, 42, 932 P.2d 794, 798 (1997)). The expert, however, cannot "act as a conduit for another non-testifying expert's opinion." *Id.* at 228 ¶ 23, 159 P.3d at 538 (citation and internal quotation marks omitted).

¶20 Here, the medical examiner testified that she formed her own opinions after reading the report on Curtis's autopsy. Although she referred to the report's findings, she used this information, as well as the photographs of the victim's body, to reach her own conclusions about Curtis's injuries and the cause of her death. Snelling confronted and cross-examined the medical examiner about her opinions. *See Rogovich*, 188 Ariz. at 42, 932 P.2d at 798 (stating "the defendant's confrontation right extends to the testifying expert witness, not to those who do not testify but whose findings or research merely form the basis for the witness's testimony"). Therefore, the medical examiner's testimony was not hearsay and did not violate Snelling's confrontation rights.

9

**¶21** Snelling cites cases such as *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009), and *Johnson v. State*, 929 So. 2d 4, 7 (Fla. Dist. Ct. App. 2005), which involved admission of documents that were found to be testimonial. Even if we assume the autopsy report was testimonial, however, it was not admitted into evidence and, thus, no Confrontation Clause violation occurred.

### INDEPENDENT REVIEW

**¶22** Because the murder occurred before August 1, 2002, this Court independently reviews the aggravation, mitigation, and propriety of the death sentence.[4] A.R.S. § 13-755(A) (2010); 2002 Ariz. Sess. Laws, ch. 1, § 7 (5th Spec. Sess.).

**¶23** The first jury found only one aggravating factor – that Snelling murdered Curtis in an especially cruel manner. We review the record de novo to determine whether the evidence supports that finding beyond a reasonable doubt. *Anderson*, 210 Ariz. at 354 ¶ 119, 111 P.3d at 396 (citing former § 13-703.04). Because the first jury found the aggravator, we limit our review to the evidence presented to that jury in the guilt and aggravation phases, without considering evidence presented to

---

[4] Snelling argues there was insufficient evidence to support the jury's finding of the (F)(6) aggravator. This claim, however, is subsumed in our independent review of the aggravating factor. *See State v. Andriano*, 215 Ariz. 497, 506 n.5 ¶ 41, 161 P.3d 540, 549 n.5 (2007).

10

the second penalty phase jury.  *See Ellison*, 213 Ariz. at 142 n.19 ¶ 121, 140 P.3d at 925 n.19 (declining on independent review to consider evidence that was not presented to the sentencing jury); *cf.* A.R.S. § 13-752(K) (2010) ("The new jury shall not retry the issue of the defendant's guilt or the issue regarding any of the aggravating circumstances that the first jury found by unanimous verdict to be proved or not proved.").

¶24    The United States Supreme Court has determined that Arizona's (F)(6) aggravator is facially vague but may be remedied by judicial constructions limiting its application to specified circumstances.  *Walton v. Arizona*, 497 U.S. 639, 654 (1990), *overruled on other grounds by Ring v. Arizona (Ring II)*, 536 U.S. 584, 589 (2002); *see also Arave v. Creech*, 507 U.S. 463, 474 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm.").[5]

¶25    Our case law has so limited the (F)(6) aggravator.  We have held that a murder is especially cruel only if the state proves beyond a reasonable doubt that "the victim consciously

---

[5]    Because Arizona now requires jury findings of aggravation and jury sentencing in capital cases, A.R.S. § 13-752(E), (H), the facial vagueness of the (F)(6) aggravator "may be remedied with appropriate narrowing instructions," *State v. Tucker*, 215 Ariz. 298, 310 ¶ 28, 160 P.3d 177, 189 (2007).

11

experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citation omitted). Although "[t]he victim . . . does not need to be conscious for each and every wound inflicted," *State v. Sansing*, 206 Ariz. 232, 235 ¶ 7, 77 P.3d 30, 33 (2003) (citation and internal quotation marks omitted), the (F)(6) aggravator cannot be found if the evidence on consciousness is inconclusive, *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d 602, 620 (1988).

¶26      In addition, we have been "unwilling to say that all stranglings are per se cruel." *State v. Schackart*, 190 Ariz. 238, 248, 947 P.2d 315, 325 (1997). Rather, to establish that a murder by strangulation or any other means is especially cruel, the state must prove that the particular victim consciously suffered mental anguish or physical pain before death. *See Ellison*, 213 Ariz. at 141-42 ¶ 119, 140 P.3d at 924-25 (strangulation); *State v. Ramirez*, 178 Ariz. 116, 129, 871 P.2d 237, 250 (1994) (stabbing).

## I.  Mental Anguish

¶27      "Mental anguish includes the victim's uncertainty as to her ultimate fate." *State v. Lavers*, 168 Ariz. 376, 392, 814 P.2d 333, 349 (1991). In evaluating uncertainty, "[t]he length of time during which a victim contemplates her fate affects

whether the victim's mental anguish is sufficient to bring a murder within that group of murders that is especially cruel." *State v. Prince*, 206 Ariz. 24, 27 ¶ 8, 75 P.3d 114, 117 (2003); *see State v. Soto-Fong*, 187 Ariz. 186, 204-05, 928 P.2d 610, 628-29 (1996) (finding the time of contemplation insufficient when the victims were killed in rapid succession). Evidence of a victim's pleas or defensive injuries can show that she suffered mental anguish. *Sansing*, 206 Ariz. at 236 ¶ 10, 77 P.3d at 34. "The entire murder transaction, not just the final act, may be considered." *State v. McCray*, 218 Ariz. 252, 259 ¶ 31, 183 P.3d 503, 510 (2008).

¶28 The record contains no evidence that Curtis contemplated her fate for very long. Based on what Snelling had told him, Rader testified in the guilt phase that Curtis yelled "Who's there?" around the same time that Snelling was cutting the cord in the upstairs bedroom. According to Rader, Curtis opened the bathroom door, saw Snelling, and "got belligerent and yelled" when "he told her to just shut up and do what he said." Snelling then strangled her with the cord "to shut her up" and "freaked" when "she fell down."

¶29 Curtis likely was terrified when she heard a noise, opened her bathroom door, and saw Snelling holding an electrical cord. And, unlike the victim in *State v. Jimenez*, 165 Ariz. 444, 454, 799 P.2d 785, 795 (1990), she was in her own house and

13

did not know her attacker. But the clear inference from Rader's testimony is that very little time elapsed between Curtis's initially seeing Snelling and the murder. *Cf. Prince*, 206 Ariz. at 27 n.5 & ¶ 8, 75 P.3d at 117 n.5 (listing cases that "involved a longer, more definite period of captivity").

¶30 The record also does not show that Curtis had any defensive injuries. *Cf. State v. Van Adams*, 194 Ariz. 408, 421 ¶ 45, 984 P.2d 16, 29 (1999) (noting "[i]njuries to [a strangulation victim's] hands and wrists signify that she struggled and attempted to defend herself"). The medical examiner, when questioned about the possibility of sexual assault, testified that Curtis did not have any obvious lacerations or bruises; and she discussed only the single ligature mark on Curtis's neck when asked about external physical injuries.

¶31 In addition, there was no evidence that Curtis struggled with Snelling or pleaded for her life. Curtis had only a single ligature mark, indicating the ligature was not readjusted once placed on her neck. *Cf. State v. Stokley*, 182 Ariz. 505, 517, 898 P.2d 454, 466 (1995) (noting "evidence of repetitive gripping of [the strangulation victim's] neck" as one possible indicator of a struggle). The small bathroom in which the murder occurred was undisturbed; Curtis's clothes were neatly stacked on the toilet seat, and cleaning supplies were

14

lined up on the toilet tank. *Cf. State v. Walden*, 183 Ariz. 595, 618, 905 P.2d 974, 997 (1995) (finding signs of a struggle when victim's hands were intertwined in the electrical cord used to strangle her and blood was sprayed around the room), *overruled on other grounds by State v. Ives*, 187 Ariz. 102, 108, 927 P.2d 762, 768 (1996); *State v. Amaya-Ruiz*, 166 Ariz. 152, 177-78, 800 P.2d 1260, 1285-86 (1990) (noting as evidence supporting cruelty that "[t]he crime scene exhibited signs of a violent and bloody struggle").

¶32 Absent any evidence of defensive injuries, a struggle, or pleas for help, the record shows only that Curtis was suddenly confronted by an assailant who promptly strangled her to death. "It is not inherently 'cruel' to murder a victim quickly and by surprise." *Jimenez*, 165 Ariz. at 454, 799 P.2d at 795. On this record, we cannot find beyond a reasonable doubt that, before her death, Curtis experienced the mental anguish required by our prior decisions.

## II. Physical Pain

¶33 Strangulations are not per se physically cruel absent specific evidence that the victim consciously suffered physical pain. *Ellison*, 213 Ariz. at 142 n.19 ¶ 121, 140 P.3d at 925 n.19 (citing *Schackart*, 190 Ariz. at 248, 947 P.2d at 325). Yet "[t]his Court has held that a period of suffering from eighteen seconds to two to three minutes can be enough to warrant

15

application of the cruelty aggravator." *Schackart*, 190 Ariz. at 248, 947 P.2d at 325.

¶34       The State presented no evidence of physical suffering. The medical examiner did not testify that victims in general always experience, or that Curtis in particular experienced, pain during strangulation.[6]   Nor did she mention any other injuries unrelated to the strangulation itself that might have caused Curtis pain.  *Cf. State v. Brewer*, 170 Ariz. 486, 501-02, 826 P.2d 783, 798-99 (1992) (finding the strangulation victim suffered physical pain from the injuries to her eye and the numerous bruises and abrasions on her body).

¶35       The record also does not support a finding of physical pain relating to a sexual assault.  *Cf. Sansing*, 206 Ariz. at 236 ¶ 11, 77 P.3d at 34 (finding "[t]he evidence of the [victim's] rape independently establishes both mental and physical suffering").   Although found naked, Curtis apparently disrobed voluntarily to take a shower in the upstairs bathroom. Neither semen nor sperm was found on the swabs collected in the sexual assault kit.   The medical examiner testified that Curtis had no "obvious lacerations" or "gross bruises."     The

---

[6]    The medical examiner testified that Curtis's thyroid cartilage was fractured during strangulation, but noted that this cartilage, like the hyoid bone, is "easily fractured."   In addition, she did not describe the nature or extent of any pain associated with that internal injury.

16

positioning of Curtis's body on its side when found also did not indicate a sexual assault. And the trial court directed a verdict against the State on the sexual assault predicate for the felony murder charge (but not the attempted sexual assault predicate) after determining that the evidence did not support such a finding.

¶36    In addition, the evidence on whether Curtis consciously experienced physical pain was inconclusive. Based on unidentified reports in medical literature, the medical examiner testified that a strangulation victim generally remains conscious for ten to one hundred seconds if the ligature totally encircles the neck and the victim remains passive. She further testified that such victims might remain conscious for minutes if the ligature does not completely encircle the neck and the victim fights. No other evidence, however, indicated whether, or for how long, Curtis was conscious while being strangled. *Cf. State v. Morris*, 215 Ariz. 324, 341 ¶ 79, 160 P.3d 203, 220 (2007) (finding cruelty when the state presented evidence of a struggle in addition to expert testimony that strangulation victims remain conscious and experience pain for some time). And even if Curtis was conscious for some time during the strangulation, that alone does not support a finding of physical pain.

¶37    Although one might reasonably suspect that any

17

strangulation victim must experience physical pain, speculation cannot support a finding of especial cruelty when, as here, the record contains no evidence of the physical pain required for an (F)(6) finding. *Cf. State v. Atwood*, 171 Ariz. 576, 606, 832 P.2d 593, 623 (1992) (noting that "[w]e will not speculate on appeal about 'what might have been' or 'what could have happened'"), *disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241 ¶ 25, 25 P.3d 717, 729 (2001). Absent evidence of the pain experienced during strangulation or other bruises, abrasions, or wounds on the victim, and lacking any proof of a struggle, we cannot find beyond a reasonable doubt that Curtis consciously suffered physical pain before or during the strangulation. *See State v. Poland*, 144 Ariz. 388, 405, 698 P.2d 183, 200 (1985) (finding no evidence that the victims suffered because "[t]he autopsy revealed no evidence that they had been bound or injured prior to being placed in the water, and there was no sign of a struggle"); *cf. State v. Newell*, 212 Ariz. 389, 406 ¶ 85, 132 P.3d 833, 850 (2006) (finding cruelty in a ligature strangulation case when the evidence showed "bruising that occurred at or near the time of death consistent with grasping [the victim's] arms, sexual assault-related bruises and injuries, testimony that it normally takes two minutes for death by asphyxiation to occur, and marks showing that [the victim] was grasping at the ligature").

¶38      "The death penalty may be imposed only if the state has proved the existence of at least one aggravating factor beyond a reasonable doubt," *Ramirez*, 178 Ariz. at 128, 871 P.2d at 249, and we "will reduce a death penalty to life imprisonment where the evidence of aggravating factors is inconclusive," *State v. Jordan*, 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980).[7]

## CONCLUSION

¶39      We affirm Snelling's conviction for first degree murder.  On independent review, however, we find the record insufficient to support the (F)(6) aggravator because the evidence does not prove beyond a reasonable doubt that Curtis consciously suffered mental anguish or physical pain sufficient to render the murder especially cruel.  Therefore, we vacate Snelling's death sentence and sentence him to imprisonment for natural life.  A.R.S. § 13-703(A) (1993) (currently § 13-751(A)) (providing that a defendant guilty of first degree murder can be sentenced to death, natural life imprisonment, or life imprisonment with the possibility of release in twenty-five years); *cf. State v. Wallace*, 219 Ariz. 1, 8 ¶ 38, 191 P.3d 164, 171 (2008) (commuting one of the defendant's death sentences to

----

[7]      Because we do not find sufficient evidence to support the sole aggravator on our independent review, we do not consider Snelling's mitigation evidence.  *See* A.R.S. § 13-752(F)-(G) (providing that the penalty phase at which mitigation evidence may be presented is held only after one or more aggravating circumstances has been found).

life imprisonment, in accordance with sentencing statute in effect at the time of his crimes, after concluding that "the sole aggravating circumstance alleged should not have been submitted to the jury for [that] murder").[8]

_____
      A. John Pelander, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice

_____

[8]    Given our disposition of this matter, we need not address other issues raised by Snelling concerning the aggravation and penalty phases of the trial. Nor need we list the twenty-nine issues concerning the death penalty raised to avoid federal preclusion.