SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-08-0038-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2003-038541 |
| AARON BRIAN GUNCHES, | ) |
| | ) |
| Appellant. | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Rosa Mroz, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                Phoenix
    By   Kent E. Cattani, Chief Counsel
         Criminal Appeals/Capital Litigation Section
         Jonathan Bass, Assistant Attorney General      Tucson
Attorneys for State of Arizona

MARICOPA COUNTY LEGAL DEFENDER'S OFFICE                Phoenix
    By   Brent E. Graham, Legal Defender
Attorney for Aaron Brian Gunches
_____

**B A L E S**, Justice

¶1      Aaron Brian Gunches pleaded guilty to kidnapping and first degree murder and was sentenced to death for the murder. We have jurisdiction over this mandatory appeal under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 13-4031 and 13-4033(A)(1) (2010).

1

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

¶2 In November 2002, Ted Price visited his ex-wife, Katherine Lecher, in Mesa, Arizona. Price planned to stay at Lecher's apartment while waiting for a school grant. After about ten days, the two began fighting and Lecher told Price to leave. The argument became increasingly heated and Lecher hit Price in the face with a telephone. Price remained conscious but appeared dazed and unresponsive.

¶3 Gunches came to the apartment that evening. After talking with Lecher, he asked her two roommates, Michelle Beck and Jennifer Garcia, to put Price and his belongings into Lecher's car so Gunches could take him to the bus station. Gunches told Garcia to drive. Once at the station, Gunches said he did not have enough money for a bus ticket. He ordered Garcia to drive out of Mesa. Soon thereafter, he told her to turn onto a dirt path and to drive toward a dark, isolated desert area.

¶4 Garcia stopped the car. While Gunches was looking in the trunk, Price got out. Garcia then heard three popping sounds and saw Price fall to the ground; after hearing another popping sound, she saw Gunches standing by Price's body with a

---

[1] We view the facts in the light most favorable to sustaining the jury's verdicts. *See State v. Garza*, 216 Ariz. 56, 61 n.1, 163 P.3d 1006, 1011 n.1 (2007).

gun at his side. Gunches got into the car, and Garcia drove back to Mesa, stopping once to dispose of Price's belongings in a dumpster.

¶5 Price's body was discovered several days later. After Price was identified, detectives interviewed Lecher, Beck, and Garcia. Beck said that Gunches told her that he had killed Price. While the investigation continued, Gunches was arrested in La Paz County for shooting at a law enforcement officer. He later pleaded guilty to attempted murder for that incident. The authorities matched the weapon used in the La Paz County shooting with projectiles recovered from Price's body and projectiles and a shell casing recovered from the murder scene.

¶6 In October 2003, Gunches was indicted for the first degree murder and kidnapping of Price. Gunches was found competent to stand trial in November 2005 and competent to waive his right to counsel in November 2007. He subsequently pleaded guilty to both counts. Based on the La Paz County conviction, Gunches stipulated during the aggravation phase that he had previously been convicted of a serious offense under A.R.S. § 13-751(F)(2) (2010). The jury also found that Price's murder was committed in an especially heinous or depraved manner, *see id.* § 13-751(F)(6). Gunches presented virtually no mitigation evidence during the penalty phase (an objection was sustained to the only question he asked his one mitigation witness), but

3

requested leniency in allocution. The jury determined that he should be sentenced to death.

## DISCUSSION

¶7 Gunches raises nine issues on appeal and also lists twenty-two other constitutional challenges to Arizona's death penalty that he acknowledges this Court has previously rejected. As explained below, we reject Gunches's argument that the trial court erred in finding him competent to waive counsel. Because we conclude that the jury's erroneous finding of an aggravating circumstance requires retrial of the penalty phase, we do not address Gunches's other arguments regarding the death penalty.

## I. Competency to Waive Counsel

¶8 Gunches argues that the trial court violated his due process rights by finding him competent to waive counsel and allowing him to represent himself. We review a trial court's determination that a defendant has knowingly, intelligently, and voluntarily waived counsel for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, 360 ¶ 25, 207 P.3d 604, 613 (2009).

¶9 Although "[t]he federal and state constitutions guarantee [a defendant] the right to waive counsel and to represent [him]self," *id.* at 359 ¶ 16, 207 P.3d at 612, a mentally incompetent defendant cannot validly waive the right to counsel, *State v. Djerf*, 191 Ariz. 583, 591 ¶ 21, 959 P.2d 1274, 1282 (1998). Under the Due Process Clause of the Fourteenth

4

Amendment, the competency standard for waiving the right to counsel is the same as the competency standard for standing trial. *See Godinez v. Moran*, 509 U.S. 389, 399 (1993). A defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted).

¶10        Gunches does not claim that the trial court erred in finding him competent to stand trial. He instead relies on *Indiana v. Edwards,* 128 S. Ct. 2379, 2388 (2008), in which the Supreme Court held that "the Constitution permits [s]tates to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards* recognized that some "gray-area" defendants may be competent to stand trial but "unable to carry out the basic tasks needed to present [their] own defense[s] without the help of counsel." *Id.* at 2386.

¶11        *Edwards*, however, does not suggest the trial court erred by allowing Gunches to represent himself. *Edwards* allows, but does not require, states to insist upon representation by

5

counsel for certain "gray-area" defendants. It does not give such a defendant a constitutional right to have his request for self-representation denied. Moreover, even assuming that Arizona courts would apply a heightened standard of competency for such defendants to waive counsel (an issue we need not decide here), we find no error in the trial court's allowing Gunches to represent himself.

¶12       Gunches was not a "gray-area" defendant "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Id.* Three doctors found Gunches competent to stand trial, and another specifically found him competent to waive counsel. The trial court engaged Gunches in several colloquies regarding his choice to represent himself, and Gunches was assisted by advisory counsel. Although Gunches pleaded guilty, admitted one aggravator, and did not introduce mitigation evidence, he made a coherent opening statement and closing argument during the aggravation phase, cross-examined all of the State's witnesses, made objections, and made a Rule 20 motion as to the (F)(6) aggravator. Thus, even under the heightened competency standard allowed by *Edwards*, the trial court did not abuse its discretion in finding Gunches competent to waive counsel and represent himself.

   **II.    Sufficiency of Evidence to Support (F)(6) Aggravator**

¶13       Gunches argues that the State failed to prove the

6

(F)(6) aggravator beyond a reasonable doubt. Because Price's murder occurred after August 1, 2002, we do not independently review the jury's finding of this aggravator, but instead consider whether the jury abused its discretion. *See* A.R.S. § 13-756(A) (2010).

¶14      In reviewing a sufficiency of the evidence claim under the abuse of discretion standard, we "review[] the record to determine whether substantial evidence supports the jury's finding, viewing the facts in the light most favorable to sustaining the jury verdict." *State v. Roque*, 213 Ariz. 193, 218 ¶ 93, 141 P.3d 368, 393 (2006). "Substantial evidence is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

¶15      Under A.R.S. § 13-751(F)(6), a first degree murder is aggravated when "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner." The jury here did not find the murder especially cruel, but did find it especially heinous or depraved. "Heinousness and depravity go to a defendant's mental state as reflected in his words and actions at or near the time of the offense." *State v. Johnson*, 212 Ariz. 425, 439 ¶ 55, 133 P.3d 735, 749 (2006). Five factors are generally relevant in determining "whether a killing was

especially heinous or depraved: (1) relishing the murder, (2) infliction of gratuitous violence, (3) needless mutilation of the victim, (4) senselessness of the crime, and (5) helplessness of the victim." *State v. Bocharski*, 218 Ariz. 476, 493 ¶ 83, 189 P.3d 403, 420 (2008) (citing *State v. Gretzler*, 135 Ariz. 42, 51-52, 659 P.2d 1, 10-11 (1983)).

**¶16** The State alleged three factors: (1) Gunches inflicted gratuitous violence beyond that necessary to kill; (2) Price's murder was senseless; and (3) Price was helpless. Gunches does not seriously contest the jury's findings of senselessness or helplessness. However, "senselessness and helplessness, without more, generally do not render a killing especially heinous or depraved." *State v. Wallace*, 219 Ariz. 1, 6 ¶ 25, 191 P.3d 164, 169 (2008). Thus, the State here must also prove gratuitous violence. To do so, the State must establish that the defendant (1) "inflicted more violence than that necessary to kill," and (2) "continued to inflict violence *after he knew or should have known that a fatal action had occurred*." *Bocharski*, 218 Ariz. at 494 ¶¶ 86-87, 189 P.3d at 421.

**¶17** The record contains substantial evidence that Gunches inflicted more violence than was necessary to kill. The medical examiner testified that Price was shot four times, suffering three gunshot wounds to the chest and one to the back of the head. Each wound, the examiner concluded, ultimately would have

8

been fatal.

¶18     The record, however, does not support the jury's finding that Gunches acted with the "necessary vile state of mind."  *Id*. at 494 ¶ 85, 189 P.3d at 421.  Garcia testified that on the night of the murder, she heard three popping sounds before seeing Price fall to the ground, and then heard a fourth popping sound and saw Gunches standing by Price's body.  She said that these events "happened . . . fast."  Garcia also testified that the murder occurred after dark, that she had turned off the car's headlights, and that she could "[b]arely [see] at all."

¶19     Detectives found Price laying on his right side, and photographs taken of Price's body suggest that the draping of his left arm may have obscured the gunshot wounds to his chest. The medical examiner testified that there was no evidence of "gunpowder, stippling or soot deposit" on Price's body to suggest close-range firing, and concluded that the shots came from a distance of at least two feet.  Garcia testified that Gunches was even further away from Price when the first three shots occurred.

¶20     Given these circumstances, there is insufficient evidence to establish beyond a reasonable doubt that Gunches knew or should have known that he had fired a fatal shot and yet continued to inflict violence.  Instead, the more plausible

9

inference is that after firing three shots in quick succession from a distance of several feet, Gunches was unable, given Price's body position and the darkness of the night, to discern whether Price was dead or dying before he shortly thereafter fired the final shot to Price's head.

¶21     Indeed, Garcia testified that she heard Price breathing after he fell to the ground, and the investigating detective found evidence of aspiration around Price's mouth, suggesting that he continued to "breathe a couple of times" while on the ground.  The medical examiner also testified that he found a liter of blood inside Price's chest and abdominal cavities, indicating that his heart continued "[to beat] for a while" after the shooting.

¶22     Even when viewed in the light most favorable to sustaining the verdict, the evidence suggests that Price's final shot "came in an attempt . . . to kill the victim, not to engage in violence beyond that necessary to kill."  *Wallace*, 219 Ariz. at 8 ¶ 37, 191 P.3d at 171 (quoting *State v. Anderson*, 210 Ariz. 327, 355 ¶ 123, 111 P.3d 369, 397 (2005)); *see, e.g.*, *State v. Cañez*, 202 Ariz. 133, 161-62 ¶ 106, 42 P.3d 564, 592-93 (2002) (finding no gratuitous violence because defendant "merely escalated his attacks until he succeeded in killing [victim]").

¶23     The jury's verdict on the (F)(6) aggravator was therefore in error.  The State, however, argues that any error

10

was harmless because Gunches stipulated that he had previously been convicted of a serious offense under A.R.S. § 13-751(F)(2) and he presented virtually no mitigation in the penalty phase.

¶24      We disagree.  For an error to be harmless, the State must establish beyond a reasonable doubt that the error did not contribute to or affect the verdict.  "The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error."  *State v. Anthony*, 218 Ariz. 439, 446 ¶ 39, 189 P.3d 366, 373 (2008) (internal quotation marks omitted).

¶25      The State cannot discharge its burden here.  In its penalty phase opening statement and closing argument, the State reminded the jury of its aggravation phase verdict that Price's murder was heinous or depraved and called attention to the fact that the jury had previously found gratuitous violence.  It further emphasized that in some cases, the "aggravating circumstances . . . are so heinous and so outrageous that the ultimate penalty is warranted," and argued that "[t]his case is one of them."  Thus, even with the (F)(2) aggravator, we cannot conclude beyond a reasonable doubt that the jury's flawed (F)(6) finding did not contribute to or affect its ultimate conclusion that Gunches deserved death.  Accordingly, we vacate Gunches's

11

death sentence and remand for a new penalty phase proceeding. *See* A.R.S. § 13-756(B) (requiring remand for resentencing when an error is made in capital sentencing proceedings "[i]f the supreme court cannot determine whether the error was harmless beyond a reasonable doubt").

## CONCLUSION

¶26 For the foregoing reasons, we affirm Gunches's convictions for kidnapping and first degree murder and the presumptive sentence imposed on the kidnapping charge. We vacate the sentence of death for first degree murder and remand for a new penalty phase proceeding.

_____
W. Scott Bales, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
A. John Pelander, Justice