NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

KIMMIE DWAYNE BAKER, *Appellant*.

No. 1 CA-CR 12-0714
FILED 3-25-2014

---

Appeal from the Superior Court in Maricopa County
CR2012-005802-001
The Honorable Edward W. Bassett, Judge

**AFFIRMED AS AMENDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Myles Braccio
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Colin F. Sterns
*Counsel for Appellant*

<hr />

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

<hr />

**O R O Z C O**, Judge:

¶1  Appellant Kimmie Dwayne Baker[1] (Baker) appeals from his convictions and sentences for burglary and theft, following a jury trial. On appeal, Baker argues that because his theory of the case was unreasonable and his beliefs in this regard "irrational," the trial court should have sua sponte conducted a hearing pursuant to Rule 11 of the Arizona Rules of Criminal Procedure (2005) (Rule 11 hearing) to determine whether he was competent to defend himself. For the reasons that follow, we affirm Baker's convictions and sentences as amended.

## FACTS AND PROCEDURAL HISTORY

¶2  Baker was the head security guard at Tempe High School (THS) for approximately nine years and a security guard there for nineteen years. Baker's arrest, subsequent convictions, and this appeal originate from the following sequence of events.

¶3  On Friday, September 23, 2011, THS hosted a varsity football game. The school had specific procedures in place to keep the money generated at the game safe until it could be deposited. Once the ticket booth employees finished collecting the ticket money, they counted the money, prepared a deposit slip, and placed the funds in pre-assigned deposit bags. The deposit bags were then placed in a locked closet near the principal's office area until a security guard took the deposit to the bookstore on Monday morning. Very few THS employees knew where the money was stored.

<hr />

[1] Throughout the record before us, Defendant's name is spelled in several different variations, including, but not limited to Kim and Kimmie. For the purposes of consistency, we refer to Defendant as Kimmie, as it appears in the Notice of Appeal.

¶4 On Monday morning, the security guard who had placed the deposit bags in the closet on Friday night took the money to the bookstore. However, on Tuesday morning, the bookstore called the vice principal, Shelly Arredondo (Arredondo) to inform her that some of the money from Friday night's game was missing. Thereafter, Arredondo notified THS's resource officer, Detective Hampton, of the possible theft.

¶5 Arredondo and Detective Hampton believed that someone within THS committed the theft because the money had been locked in a secret place, there were no sign of forced entry, and the deposit bags turned into the bookstore were not the original bags used at the football game but were actually deposit bags taken from the cafeteria manager's office. Detective Hampton initiated an investigation wherein she interviewed many school staff members and reviewed school surveillance video to determine which employees were on campus, had knowledge of the money, and had access to the locked closet. As a result of her investigation, Detective Hampton suspected Baker.

¶6 A search warrant was executed on Baker's fiancée's apartment. Baker was arrested after a key was found in the apartment that provided Baker access to the locked closet where the money was kept. Baker previously denied having a key to the closet.

¶7 Baker was indicted for Burglary in the third degree, a class four felony, pursuant to Arizona Revised Statutes (A.R.S.) section 13-1506 (2010); and Theft, a class six felony, pursuant to A.R.S. § 13-1802 (Supp. 2013).

¶8 At his arraignment, Baker pled not guilty and counsel was appointed. That same day, Baker filed a pro se motion to represent himself. Thereafter, Baker filed a pro se motion requesting an omnibus hearing, which challenged the State's DNA evidence and appropriately cited Arizona Rule of Criminal Procedure 16.

¶9 In March 2012, the trial court inquired into Baker's competency to waive his right to counsel at a pretrial conference. Both the State and Baker's attorney noted that Baker had clearly expressed his wish to proceed without counsel. Baker's counsel recommended advisory counsel be appointed, but also noted that, in general, Baker's motions had been appropriate.

¶10 After requiring Baker to meet his appointed counsel and review a waiver of counsel form, which outlined the potential ramifications of waiving counsel, Baker returned to court with his signed

waiver form. The trial court conducted a colloquy to ensure Baker's waiver was knowing, voluntary, and intelligent. The court inquired into Baker's education (high school graduate) and reading abilities. Moreover, the trial court confirmed Baker had not used any drugs, alcohol, or medications in the past twenty-four hours; Baker had no mental problems in the past; and Baker had previously represented himself in a civil matter. The trial court advised Baker of his right to an attorney at all critical stages of the case and confirmed Baker understood. Finally, the trial court explained that if Baker could not afford an attorney, the court was willing to appoint one to represent him.

¶11        Next, the trial court outlined the dangers and disadvantages involved in representing oneself, to which Baker responded, "Your Honor, I believe I best know this case since I'm the party involved. . . . I feel I'd be best representing myself at this point." The trial court explained the possible penalties involved with each charge Baker faced. Baker responded that he understood the potential penalties and sentences. The trial court explained that by representing himself, he would be assuming responsibility for all aspects of the trial (including examining witnesses, asserting legal defenses, filing and arguing motions, etc.) and would be held to the same standard as an attorney. Baker indicated he understood the responsibility and the standards. Baker confirmed that he still wished to waive counsel and was making the choice of his own volition without force or threat.

¶12        The trial court accepted Baker's waiver of right to counsel as knowing, intelligent, and voluntary. The trial court also appointed advisory counsel and reminded Baker that if he changed his mind, counsel would be appointed to finish the case.

¶13        Throughout the proceedings, Baker filed pro se motions in support of his defense. For example, Baker filed a motion to dismiss the case, alleging that he was not read his *Miranda* rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). After conducting a hearing and watching a video of Baker receiving the *Miranda* warnings, the trial court denied the motion. Baker filed a second motion to dismiss, which cited Arizona Rule of Criminal Procedure 16.6(b) and alleged that the prosecution was malicious in nature. Baker remarked, "the state's case is circumstantial at best," and argued that the indictment failed as a matter of law because the State had "no evidence of a crime." The trial court denied this motion. Next, Baker filed a pretrial motion to compel discovery, requesting production of a key held by the Tempe Police Department, which the trial court granted. As trial grew near, Baker filed a motion objecting to the

State's requested continuance pursuant to Arizona Rule of Criminal Procedure 8.7.

¶14 Baker filed a "Comprehensive Pretrial Conference Statement" in April 2012, which listed the charges he faced. Within this pleading, Baker requested disclosure of specific undisclosed evidence. In a pretrial conference, the trial court told Baker, "my first and foremost obligation [is to] make sure you get a fair trial. And you have done an exceptional job from the work I've seen."

¶15 During the jury trial, Baker participated in voir dire, asked follow-up questions, filed motions, examined and cross-examined witnesses, raised objections, gave an opening statement and a closing argument, and participated in drafting the jury instructions. Baker's defense challenged the State's evidence by questioning the investigation and by evoking positive comments about his character from witnesses. Moreover, Baker presented a very clear theory of his case; i.e., he was set up for this crime by THS officials who wanted him out of his position and who conducted a "covert" operation to reach this result. At sentencing, the trial court remarked, "I will tell you, Mr. Baker, that even as you represented yourself in making statements to me today, you are eloquent and articulate. You were highly competent representing yourself at trial, and I think you did an excellent job in probing weaknesses in the case the State had against you."

¶16 Even in light of Baker's defense efforts, the jury returned guilty verdicts on both counts and found that count two involved a theft of property of more than $1000 but less than $2000. The trial court sentenced Baker to ninety days in the county jail for the charge of Burglary in the third degree. For the Theft charge, the trial court ordered $1028 in restitution. The trial court also sentenced Baker to three years' probation for each count.

¶17 Defendant timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21.A.1 (2003), 13-4031, and -4033.A (2010).

**DISCUSSION**

I.    Fundamental Error

¶18 The State argues we must apply a fundamental error analysis to the facts of this appeal as Baker failed to request the trial court order a competency evaluation. By contrast, Baker argues that the

potential error here is structural – the potential deprivation of the right to counsel – therefore remand is appropriate, not fundamental error review. We disagree.

**¶19** The proper standard of review to evaluate the trial court's choice to accept a criminal defendant's waiver of the right to counsel is abuse of discretion. *See State v. Gunches*, 225 Ariz. 22, 24, ¶ 8, 234 P.3d 590, 592 (2010). We also review the trial court's choice not to order a competency evaluation for abuse of discretion. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 162, 800 P.2d 1260, 1270 (1990).

II. Baker's Competency

**¶20** On appeal, Baker argues that his theory of the case was unreasonable and his beliefs were "irrational," which "impaired [his] ability to understand the proceedings against him," and that the trial court should have sua sponte conducted a Rule 11 hearing of Baker's competency to defend himself. We disagree.

**¶21** "The law guarantees a defendant the right to waive counsel if he is mentally competent to do so." *State v. Cornell*, 179 Ariz. 314, 324, 878 P.2d 1352, 1362 (1994) (citing *Faretta v. California*, 422 U.S. 806, 834 (1975)). The main issue on appeal is whether Baker was competent to waive counsel. In Arizona, the constitutional standard for competency to waive the right to counsel is the same standard for competency to stand trial, as required under the Fourteenth Amendment of the United States Constitution. *Gunches*, 225 Ariz. at 24-25, ¶¶ 9-12, 234 P.3d at 592-93 (citing *Godinez v. Moran*, 509 U.S. 389, 399 (1993)). If a defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him," then the defendant is competent to stand trial or to waive counsel. *See id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)) (internal quotation marks omitted).

**¶22** The trial court has broad discretion in determining whether to order a competency hearing. *See Amaya-Ruiz*, 166 Ariz. at 162, 800 P.2d at 1270. We will not disturb the trial court's decision absent a manifest abuse of discretion. *Id.* Where "reasonable grounds" exist, a criminal defendant has a right to a mental examination and hearing. *Id.* When "there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceeding against him and to assist in his defense," reasonable grounds exist. *Id.* (internal quotation marks omitted). However, the United States Constitution "permits judges to

take [a] realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *See Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008).

¶23 Although the trial court is "under a continuing duty to inquire into a defendant's competency, and to order a [Rule] 11 examination sua sponte if reasonable grounds exist," *Amaya-Ruiz*, 166 Ariz. at 162, 800 P.2d at 1270, we operate under a basic assumption that "a criminal defendant has sufficient mental competence to stand trial." *Indiana*, 554 U.S. at 174. While a trial court *may* insist upon representation by counsel for certain defendants who are competent to stand trial, but perhaps incompetent to represent themselves, such a defendant does not have a "constitutional right to have his request for self-representation denied." *See Gunches*, 225 Ariz. at 25, 234 P.3d at 593 (citing *Indiana*, 554 U.S. 164).

¶24 While Rule 11 precludes conviction or punishment of a person suffering from a mental illness, defect, or disability, the presence "of a mental illness, defect or disability alone is not grounds for finding a defendant incompetent to stand trial." Ariz. R. Crim. P. 11.1 (2005). For example, a suicide attempt, standing alone, has been held insufficient to mandate a sua sponte Rule 11 examination. *Amaya-Ruiz*, 166 Ariz. at 163, 800 P.2d at 1271. Moreover, conduct "intended to disrupt the judicial process is insufficient to require an additional [Rule] 11 examination after an initial determination of competency." *See id.*

¶25 Baker argues that his "conspiracy theory defense was irrational and implausible." However, choices of defense, even bad choices, are distinct from a "mental derangement" that "would deprive the defendant of a fair trial if allowed to conduct his own defense." *See Indiana*, 554 U.S. at 175 (internal alterations omitted). Theories of the case, even irrational ones, do not necessarily give rise to "reasonable grounds" for the court to order a Rule 11 evaluation for competency. Based on the record before us, Baker's conduct at trial falls far short of that which would have required the trial court to step in and, sua sponte, order a Rule 11 evaluation. For example, Baker proved that he was able to carry out the basic tasks needed to present his own defense without the help of counsel when he filed motions, made objections, examined witnesses, asked appropriate follow-up questions, etc. Beyond that, the basic tasks were handled competently, and Baker engaged in the voir dire process and further interacted, in an apparently appropriate fashion, with the jury through his opening and closing statements. Not only did Baker prove

that he was capable of carrying out these tasks, he was praised on multiple occasions by the trial court for his skill in executing these tasks.

¶26 At trial, the court was able to extensively interact with Baker, was able to observe Baker's courtroom behavior, and had substantial information from which to conclude that Baker understood the nature of the proceedings. Baker had court-appointed advisory counsel available to him if the logistics of the trial became confusing. The trial court engaged Baker in a detailed colloquy to ensure he understood the risks of representing himself. Baker made a coherent opening statement and closing argument. He participated in all aspects of the trial in a manner that indicated he understood what was happening.

¶27 Baker is essentially arguing that his tactical or strategic choice of the conspiracy theory defense was tantamount to incompetency. We do not agree. Baker's tactical choices did not affect his competency, just as "[d]isagreements as to trial strategy or errors in trial will not support a claim of ineffective assistance of counsel as long as the challenged conduct could have some reasoned basis." *See State v. Meeker*, 143 Ariz. 256, 260, 693 P.2d 911, 915 (1984). Rather, Baker's tactical choices indicate he was competent. As his actions illustrate, Baker not only understood the charges lodged against him and had the opportunity to consult with a lawyer to assist if necessary, but he did, in fact, fully manage and conduct his own defense. *See Gunches*, 225 Ariz. at 24-25, ¶¶ 9-12, 234 P.3d at 592-93.

¶28 Accordingly, on appeal Baker has failed to overcome the basic assumption that he was competent to stand trial, and we find no abuse of discretion in the trial court's allowing Baker to represent himself. Therefore, we will not disturb the trial court's decision not to sua sponte initiate a Rule 11 competency evaluation of Baker.

III. DNA Testing

¶29 Finally, the trial court ordered Baker to submit to DNA testing and pay the cost of the testing pursuant to A.R.S. § 13-610 (2010). While A.R.S. § 13-610.A authorizes the department of corrections to "secure a sufficient sample of blood or other bodily substances for [DNA] testing," the statute does not identify who should incur the costs of testing. *See, e.g.*, *State v. Reyes*, 232 Ariz. 468, 471, ¶ 9, 307 P.3d 35, 38 (App. 2013) (internal quotation marks omitted). Although Baker could be fined as part of his sentence, the trial court's order that Baker pay the DNA testing fee was not a fine under A.R.S. § 13-801.A for the commission of

felonies. *See id.* at 472, ¶ 13, 307 P.3d at 39. Because § 13-610 does not require Baker to incur the cost of the DNA testing, there is no basis for the cost to be imposed. *See id.* at ¶ 14. Accordingly, we vacate the portion of the sentencing order requiring Baker to pay for DNA testing.

**CONCLUSION**

**¶30**　　　　For the foregoing reasons, we affirm Baker's convictions and sentences as amended.



Ruth A. Willingham · Clerk of the Court
FILED: MJT