IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**RAHIM MUHAMMAD,**
*Appellant.*

No. CR-21-0073-PR
**Filed July 15, 2022**

Appeal from the Superior Court in Pinal County
The Honorable Delia Neal, Judge
No. S1100CR201700597
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
250 Ariz. 460 (App. 2021)
**VACATED IN PART**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Linley Wilson, Deputy Solicitor General/Section Chief of Criminal Appeals, Tanja K. Kelly (argued), Assistant Attorney General, Tucson, Attorneys for State of Arizona

Steven Czop (argued), Czop Law Firm, PLLC, Higley, Attorney for Rahim Muhammad

JUSTICE KING authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.

———————

JUSTICE KING, opinion of the Court:

¶1　　　　This case asks us to determine whether, in a case where a criminal defendant's competency has been put at issue, a trial court must make a specific finding of heightened competency before determining the defendant's waiver of the right to a jury trial is knowing, voluntary, and intelligent.　We conclude that Arizona law does not require such a specific finding of heightened competency with respect to a jury-trial waiver.

## I.　BACKGROUND

¶2　　　　In 2016, Rahim Muhammad was incarcerated in the Arizona Department of Corrections ("ADOC").　From February through September 2016, Muhammad sent a series of threatening letters to J.G., an employee of ADOC, in violation of two consecutive injunctions against harassment.　The State charged Muhammad with thirteen felony counts of aggravated harassment.

### A.　Evaluation of Muhammad's Competency

¶3　　　　In August 2017, Muhammad's counsel asked the trial court to order a preliminary competency examination of Muhammad, pursuant to Arizona Rule of Criminal Procedure 11.2(c) (authorizing preliminary competency examination to determine whether reasonable grounds exist for further examination).　The trial court granted the motion and appointed Dr. Cooper-Lopez, a psychologist, to conduct the preliminary competency examination.　Following the examination, Dr. Cooper-Lopez concluded that Muhammad's "ability to understand his case and discuss his rights and responsibilities within the court system was significantly impaired."　Dr. Cooper-Lopez further noted Muhammad "may have exaggerated his lack of legal knowledge during the exam," and "recommended this be assessed further in subsequent evaluations."

**¶4** In October 2017, the trial court ordered a full Rule 11 examination to determine if Muhammad was competent to stand trial. *See* Ariz. R. Crim. P. 11.2(a)(1) (authorizing examination to determine if defendant is competent to stand trial)*; see also* A.R.S. § 13-4503(A) (to same effect). The trial court appointed two psychologists, Dr. Harris and Dr. Geary, to conduct the examination. *See* A.R.S. § 13-4505(A)(2).

**¶5** Dr. Harris and Dr. Geary each examined Muhammad. In Dr. Harris' report, she identified Muhammad's symptoms and diagnosis and explained that Muhammad displayed "an inadequate understanding of basic legal information," including "any familiarity of the charges against him in this matter, as well as the possible consequences associated with conviction." Nonetheless, she "share[d] Dr. Cooper-Lopez's concerns that he may be exaggerating his lack of understanding." Dr. Harris concluded Muhammad was "not competent to proceed to trial," but "it should be possible for [him] to be restored to competence" with "aggressive treatment" and "education to remediate deficits in his understanding of basic legal information."

**¶6** Dr. Geary also concluded Muhammad was "not competent to stand trial or assist his attorney in his defense." Dr. Geary noted Muhammad was "clearly affected by significant mental illness," but there "were no observed difficulties with judgment." Moreover, while Muhammad "professed to have neither factual nor rational understanding of [the] charges against him," he "extensively feigned [his] lack of knowledge about legal/judicial matters" and there was "an element of malingering in this case." Dr. Geary determined Muhammad's "potential for restoration appear[ed] to be low because of [his] indifference and resistance."

**¶7** Consequently, in January 2018, the trial court found Muhammad incompetent to stand trial and ordered him to participate in an outpatient restoration to competency program with Dr. Cooper-Lopez. Muhammad participated in the program. In April 2018, Dr. Cooper-Lopez concluded Muhammad was competent to stand trial. As Dr. Cooper-Lopez explained in a written report, while Muhammad may have "a bonafide psychiatric condition," various test results indicated he had "quite likely . . . been exaggerating his memory, psychiatric, and legal

knowledge deficits." Based on her nine meetings with Muhammad, she reported he "appear[ed] to possess a rational and factual understanding of his charges and legal situation, as well as the capacity to appropriately consult with counsel."

¶8　　　　In May 2018, the trial court determined Muhammad "understands the proceedings and is able to assist counsel with [his] defense" and "is competent to stand trial." Noting that "the current medication regime is necessary to ensure [Muhammad's] ongoing competency," the trial court ordered Muhammad to "take all medications" and "follow any treatment plan as prescribed," and further ordered "the Court Clinical Liaison [to] continue to monitor" Muhammad for his "medication and treatment plan needs."

¶9　　　　In October 2018, after Muhammad requested and was appointed new counsel, his attorney requested a second competency examination under Rule 11.2(a)(1). The State objected in part, arguing that any examination should be only a preliminary examination under Rule 11.2(c). The trial court conducted a hearing and concluded a preliminary examination was "necessary to determine whether a further Rule 11 evaluation [was] necessary." The trial court appointed Dr. Vega, a psychologist, to conduct a preliminary examination of Muhammad under Rule 11.2(c).

¶10　　　　In December 2018, Dr. Vega concluded that, although Muhammad was suffering from certain symptoms, he was competent to stand trial and required no further examination. Dr. Vega explained that Muhammad (1) "has a full understanding of the reason for his arrest and the seriousness of his offense," (2) "has a factual and rational understanding of the nature of the proceedings against him," and (3) "will be able to assist counsel in the preparation of his own defense." In addition, Muhammad "understands [the] legal process and court procedures," including "the concept of a plea agreement versus taking a case to trial and the roles of the pertinent parties in court."

¶11　　　　In January 2019, the trial court reviewed Dr. Vega's report and determined Muhammad was competent to stand trial. The trial court also

concluded no additional examinations under Rule 11 were necessary. Consequently, the parties moved forward with pretrial proceedings.

## B.  Muhammad's Waiver of a Jury Trial

¶12         In April 2019, before trial commenced, Muhammad personally signed a "Waiver of Trial by Jury" form.   The form's stated purpose was "to advise you of your right to trial by jury and to allow you to give up that right if you so choose."   The form explained the rights that were being waived:

> I understand that I am entitled to a trial by jury on these charges and, if applicable, on facts used to aggravate any sentence.   The right to a trial by jury means the right to have my guilt or innocence, or, if applicable, facts used to aggravate any sentence, decided by a group of citizens whose decision must be unanimous.

Muhammad's counsel also signed the form, acknowledging he had "explained to [Muhammad] the right to trial by jury" and "consent[ed] to [Muhammad's] waiver of it," and filed the waiver with the trial court.

¶13         On June 25, 2019, the first day of trial, Muhammad repeated his request for a bench trial on the record.   Muhammad's counsel explained "the reasoning behind this is with a name like Rahim Muhammad, my client believed he could not get a fair trial in front of a largely white jury."   The trial court then engaged in a personal colloquy with Muhammad:

> THE COURT:     Have you had any drugs, alcohol or other medication in the past [twenty-four] hours?
>
> MUHAMMAD:   Yes.
>
> THE COURT:     Okay.  Are  you  taking medication prescribed in the jail?

5

MUHAMMAD:   Yes.

THE COURT:   And does that medication help you understand what's going on?

MUHAMMAD:   Yes.

THE COURT:   And do you believe you understand what's going on today?

MUHAMMAD:   Yes.

THE COURT:   All right, sir. Thank you. Sir, is it your intention to waive your right to a trial by a jury and instead allow the Court to decide the verdict?

MUHAMMAD:   Yes.

¶14      The trial court explained to Muhammad that waiving his right to a jury trial meant "giving up some important rights." Specifically, in a jury trial (1) "all the jurors would need to agree unanimously as to [his] guilt," and (2) jurors would "decide any aggravating factors that could increase the possible length of [his] prison term." The trial court informed Muhammad that, if he proceeds with a bench trial, the judge will decide "whether or not the state has proven the charges beyond a reasonable doubt" and "whether any aggravating factors exist in [his] case." The trial court also reviewed with Muhammad the charges against him, as well as the sentencing possibilities and consequences. In addition, the trial court confirmed he was not forced or threatened into waiving his right to a jury trial, nor was he promised anything in exchange for waiving this right.

¶15      After this personal colloquy, Muhammad confirmed that he preferred to proceed before a judge, rather than a jury, and he understood the consequences of doing so. The trial court concluded Muhammad had "knowingly, intelligently, and voluntarily waived his right to a jury trial" and signed the "Waiver of Trial by Jury" form.

¶16        Thereafter, during a brief discussion about pretrial rulings and the option for Muhammad to plead and have the trial court review his mental health records, Muhammad's counsel noted he "is on psychotropic medication.   He does hear voices."   In response, the trial court asked Muhammad, "Is that affecting your decision today in going forward with the bench trial?"   Muhammad responded, "No."   Muhammad's counsel affirmed, "That is his desire, Judge, to go forward with the bench trial and not submit and plead to the [thirteen] counts.   So we're ready to proceed."[1]

## C.   Muhammad's Bench Trial

¶17        The parties proceeded with a bench trial.   In the middle of the first day of trial, Muhammad asked to break and resume proceedings the next scheduled trial day.   Muhammad said he felt "incoherent" and "just not all there right now," and the "medication [was] taking a strong [e]ffect" on him and "making [him] really drowsy."   Muhammad indicated he needed "to sleep this off."   The trial court asked, "If we took a break and came back on Friday, do you think you would be feeling better by then?"   Muhammad stated, "Yes," and "we'll be able to finish on Friday."   The trial court concluded proceedings that day, ordered the parties to reconvene three days later, and advised Muhammad to be prepared "to be in court all day."

¶18        The parties reconvened as scheduled three days later. Neither Muhammad nor his counsel indicated that Muhammad was suffering from any symptoms that day.   In fact, Muhammad proceeded to testify in his own defense after establishing he was taking medications that "help [him] think better and more rationally."   Muhammad testified that

---

[1]    On the first day of trial, counsel for Muhammad stated Muhammad "does not believe he's getting adequate medical care, particularly psychiatric/psychological care" in ADOC, his goal "is to get placed in the state hospital," and the week before Muhammad was "hearing voices" and having "hallucinations."   Nonetheless, Muhammad personally affirmed on the first day of trial that he was taking prescribed medication that helped him understand what was going on, and he in fact understood what was going on that day.   *Supra* ¶ 13.

he wrote the letters to the ADOC employee because, due to his "power of discernment," he knows that "she works for the pharaoh, Charles Ryan, and she is satan herself." He also referred to himself as "Moses." After a two-day bench trial, the trial court found Muhammad guilty on all counts of aggravated harassment.

¶19 Muhammad appealed his convictions and sentences to the court of appeals. He argued that (1) "his waiver of a jury trial was constitutionally insufficient," and (2) "the trial court erred in not sua sponte ordering a third" competency examination in the middle of trial. *State v. Muhammad*, 250 Ariz. 460, 462 ¶ 1 (App. 2021). Relying on *State v. Cameron*, 146 Ariz. 210, 212 (App. 1985), the court of appeals concluded it was error for the trial court "not to make a specific on-the-record finding of [Muhammad's] competency to waive the jury trial." *Muhammad*, 250 Ariz. at 466 ¶ 18 (quoting *Cameron*, 146 Ariz. at 212). Thus, the court of appeals remanded for a hearing to determine if Muhammad met "'the higher standard of competency required to waive the right' to a jury trial: whether Muhammad was making a rational and reasoned decision to make that waiver." *Id.* at 467 ¶ 23 (quoting *Cameron*, 146 Ariz. at 213). The court of appeals found no error in the trial court's failure to order a third competency examination. *Id.* at 468 ¶ 31.

¶20 We granted review to determine whether, in a case where a criminal defendant's competency has been put at issue, a trial court is required to make a specific finding of heightened competency before determining the defendant knowingly, voluntarily, and intelligently waived the right to a jury trial. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

### A. Standard of Review

¶21 "We review questions of law de novo." *State v. Urrea*, 244 Ariz. 443, 445 ¶ 6 (2018). In addition, we review a trial court's finding as to a defendant's jury-trial waiver for an abuse of discretion. *See State v. Brewer*, 170 Ariz. 486, 495 (1992). We look only to see whether reasonable

evidence supports the trial court's finding, and we consider the facts in the light most favorable to upholding the trial court's finding.   *Id.*

## B.   The Standard for Waiving a Jury Trial under Arizona Law

¶22      Rule 18.1 sets forth the procedures and standards applicable to jury-trial waivers.   A "defendant may waive the right to a trial by jury if the State and the court consent."   Ariz. R. Crim. P. 18.1(b)(1).   However, "[b]efore accepting a defendant's waiver of a jury trial, the court must address the defendant personally, inform the defendant of the defendant's right to a jury trial, and determine that the defendant's waiver is *knowing, voluntary, and intelligent*."   Ariz. R. Crim. P. 18.1(b)(2) (emphasis added). In addition, a "defendant's waiver of a jury trial must be in writing or on the record in open court."   Ariz. R. Crim. P. 18.1(b)(3).

¶23      This Court has previously observed that the "knowing, voluntary, and intelligent" standard and the procedures in Rule 18.1(b) are appropriate and adequate.   "The pivotal consideration in determining the validity of a jury trial waiver is the requirement that the defendant understand that the facts of the case will be determined by a judge and not a jury."   *State v. Conroy*, 168 Ariz. 373, 376 (1991).   In *Conroy*, the trial "court carefully explained to defendant that he had a right to a jury trial, that by waiving the right he was abandoning the privilege of allowing a jury to determine the facts of his case and agreeing to let the trial court determine the facts and determine his guilt or innocence."   *Id.*   This Court explained, "We believe this is all that is required to accomplish the intentional waiver of a known right."   *Id.*   In sum, "[w]hat is required for a waiver is that it be made knowingly — that is, the abandonment of a *known* right or privilege — and that it be intentional."   *Id.* (citing Ariz. R. Crim. P. 18.1(b)).

¶24      Muhammad does not take issue with the requirements for a jury-trial waiver in Rule 18.1.   But he contends Arizona case law and the Arizona Constitution support the application of a heightened competency standard — above and beyond the finding of a knowing, voluntary, and intelligent waiver — in cases where a defendant's competency has been put at issue.   We review the authority Muhammad cites to determine whether Arizona law requires such a heightened competency standard.

**¶25** Muhammad claims *State v. Butrick*, 113 Ariz. 563 (1976), supports a heightened competency standard for a jury-trial waiver. In *Butrick*, the defendant signed a jury-trial waiver form, but the trial court failed to accept the waiver or determine that it was knowing, voluntary, and intelligent until *after* the bench trial. *Id.* at 565–67. Noting that "[w]hether there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case," this Court concluded that the defendant's "waiver of the right to a trial by jury was knowing, voluntary and intelligent." *Id.* at 566. And "although the trial judge fulfilled his obligation under [R]ule 18.1(b)(1) somewhat belatedly, he did fulfill it." *Id.* at 566–67.

**¶26** Muhammad emphasizes the language in *Butrick* that a "competent" waiver depends on the "unique circumstances of each case." But the full context of *Butrick* makes clear this language was used in conjunction with the Court's ultimate conclusion that the defendant "knowingly, voluntarily and intelligently waived a jury" under Rule 18.1(b)(1). *Id.* at 566–67. Thus, *Butrick* did not create a heightened competency standard; instead, it reiterated that a defendant must have "knowingly, voluntarily and intelligently waived a jury." *Id.* at 567.

**¶27** Muhammad seeks to establish two different standards: a competency standard for standing trial, and a heightened competency standard for waiving the right to a jury trial. But the Supreme Court has already indicated that a defendant who is competent to stand trial is also competent to waive constitutional rights, such as the right to a jury trial, the privilege against compulsory self-incrimination, and the right to confront one's accuser. *See Godinez v. Moran*, 509 U.S. 389, 396–402 (1993) (applying test for competence to stand trial and citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Here, the decision to waive the right to a jury trial does not "require[] an appreciably higher level of mental functioning than the decision to waive other constitutional rights"; it is "no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial." *Id.* at 398–99. As the Supreme Court explained, "[t]he purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is

uncoerced," *id.* at 401 n.12, and this standard applies to decisions to waive other constitutional rights throughout trial, *id.* at 400.

¶28　　　We recognize there are situations involving "gray-area defendants" who are competent to waive the right to counsel but may not have the mental capacity or ability to manage basic trial tasks and represent themselves at trial.　*See id.* at 399 ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself"); *Indiana v. Edwards*, 554 U.S. 164, 174–76 (2008) (noting a "gray-area defendant" is deemed competent to stand trial but may be "unable to carry out the basic tasks needed to present his own defense without the help of counsel"); *see also Westbrook v. Arizona*, 384 U.S. 150, 150 (1966) (discussing competency to waive constitutional right to assistance of counsel and conduct a defense).

¶29　　　But the decision to waive a jury trial is fundamentally different from the decision by a "gray-area defendant" seeking to waive counsel and represent himself at trial, which would necessarily require the defendant to manage trial proceedings and present a defense.　As the Supreme Court has recognized, "a defendant who would choose to forgo counsel at trial presents a very different set of circumstances, which in our view, calls for a different standard."　*Edwards*, 554 U.S. at 174–75.　This Court has also noted that

> [a] defendant who waives the assistance of counsel in a criminal trial is by that very act doing something that calls into question his rationality, and the United States Supreme Court has indicated that greater care must be taken in allowing a person to waive his right to an attorney than it does in finding him competent to stand trial.

*State v. Decello*, 111 Ariz. 46, 48–49 (1974).[2]

---

[2]　The standard applicable to a "gray-area defendant" is not before us, and we leave that issue for another day.　*See State v. Gunches*, 225 Ariz. 22, 25 ¶ 11 (2010) (explaining the standard for a gray-area defendant to waive counsel is "an issue we need not decide here").

**¶30** The cases Muhammad relies on involving defendants seeking to self-represent at trial do not support a heightened competency standard for a jury-trial waiver because of the "very different set of circumstances" presented by "gray-area defendants" who choose to waive counsel and represent themselves in a criminal trial. *See Edwards*, 554 U.S. at 174–75; *Decello*, 111 Ariz. at 48–49. This case is not about Muhammad's mental capacity to participate at trial as an advocate, carry out basic trial functions, formulate a defense strategy, or engage with the court, counsel, and witnesses. Therefore, the cases Muhammad cites regarding the waiver of counsel are not instructive. *See Gunches*, 225 Ariz. at 25 ¶ 12 (deciding "Gunches was not a 'gray-area' defendant" and "the trial court did not abuse its discretion in finding Gunches competent to waive counsel and represent himself" at trial); *State v. Cornell*, 179 Ariz. 314, 321–24 (1994) (rejecting defendant's argument that his "waiver of counsel was invalid"); *State v. Evans*, 125 Ariz. 401, 404 (1980) (affirming defendant as competent and his waiver of counsel as knowledgeable); *State v. Martin*, 102 Ariz. 142, 146 (1967) (applying the test of "whether one is legally capable of waiving counsel").

**¶31** Muhammad also cites *State v. Wagner*, 114 Ariz. 459 (1977), which he contends required the trial court to make further factual inquiries regarding his competency. But *Wagner* does not support a heightened competency standard here. In *Wagner*, the "record [was] silent whether the trial court did, in fact, determine defendant's competency to enter his plea"; therefore, this Court remanded to the trial court to make that finding. *Id.* at 463. Here, however, the record is not "silent" but instead explicitly shows the trial court found Muhammad was competent to stand trial and he knowingly, voluntarily, and intelligently waived a jury trial.

**¶32** In addition, Muhammad claims the Arizona Constitution provides grounds for a heightened competency standard for a jury-trial waiver. The Arizona Constitution provides that "[i]n criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Ariz. Const. art. 2, § 24. Further, "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. 2, § 23; *see also* Ariz. Const. art. 6, § 17 (to same effect). Muhammad claims Arizona's "inviolate" right to a jury trial supports a heightened competency standard,

noting this phrase does not appear in the United States Constitution. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .").

**¶33** As an initial matter, the adjective "inviolate" in the Arizona Constitution—which is the word Muhammad emphasizes—modifies the phrase "right of trial by jury." *See* Ariz. Const. art. 2, § 23; Ariz. Const. art. 6, § 17. By writing the text in this manner, the drafters provided that this right would be subject to legal protection, *see inviolable*, New Websterian Dictionary (1912) ("that cannot be profaned or injured; unbroken. Inviolate"), but did not mandate a heightened standard for a defendant's waiver of that right. *See Bowden v. Nugent*, 26 Ariz. 485, 486-88 (1924) (reviewing prior version of art. 2, § 23 which provided the "right of trial by jury shall remain inviolate"). Indeed, this Court has "consistently held that the phrase 'shall remain inviolate' preserves the right to jury trial as it existed at the time Arizona adopted its constitution." *Derendal v. Griffith*, 209 Ariz. 416, 419 ¶ 9 (2005) (citing *Benitez v. Dunevant*, 198 Ariz. 90, 93 ¶ 4 (2000); *Bowden*, 26 Ariz. at 488). Arizona's "constitutional guarantee of trial by jury is not a *grant*, but a *reservation* of a pre-statehood right. Thus, those offenses linked to jury trial at common law at the time the constitution was adopted are protected by the constitutional guarantee." *Benitez*, 198 Ariz. at 93 ¶ 4 (internal citations omitted). In application, this means that a defendant charged with certain misdemeanor offenses may be entitled to a jury trial in Arizona even though those offenses may not have entitled him to a jury trial under the United States Constitution. *See Derendal*, 209 Ariz. at 419 ¶ 9 ("[O]ur constitution requires that the state guarantee a right to jury trial for any defendant charged with an offense for which a jury trial was granted prior to statehood.").

**¶34** Accordingly, the phrase "shall remain inviolate" provides the right to a jury trial to a broader *class* of defendants than the Sixth Amendment, but it does not provide broader *protection* for those defendants than the Sixth Amendment does, nor does it require a greater demonstration of the waiver of the right. *See Benitez*, 198 Ariz. at 94 ¶ 10 ("Arizona operates with a broader jury eligibility standard, providing its citizens with greater access to jury trials than the federal constitution

mandates."); *see also State v. Carlson*, 202 Ariz. 570, 577 ¶ 18 (2002) ("Arizona's right to an impartial jury is no broader than the Sixth Amendment."). The Arizona Constitution does not require a heightened competency standard for a defendant's waiver of a jury trial.

¶35 We also find it significant that the Arizona Constitution affirmatively provides criminal defendants the right to seek a bench trial. Ariz. Const. art. 6, § 17 (stating "trial by jury may be waived . . . by the parties with the consent of the court in any criminal cause"). If we were to impose a heightened competency standard for a jury-trial waiver, we would necessarily impose additional burdens on defendants with mental illnesses who would otherwise be competent to stand trial and who wish to exercise their constitutional right to proceed by bench trial. The Arizona Constitution does not distinguish between defendants with mental illnesses and those without as it pertains to jury trials, and we decline to do so today.

¶36 We note that a defendant's attorney always remains in a position to alert the trial court to any new facts suggesting incompetence at the time of the jury-trial waiver. *See* § 13-4503(A); Ariz. R. Crim. P. 11.2(a). And the trial court itself remains in a position to observe any changes in behavior at the time of the waiver that may suggest a need for further examination. *See* § 13-4503(A)–(B); Ariz. R. Crim. P. 11.2(a)(1), (c); *see also State v. Moody*, 208 Ariz. 424, 443 ¶ 48 (2004) ("In determining whether reasonable grounds exist [for another competency hearing], a judge may rely, among other factors, on his own observations of the defendant's demeanor and ability to answer questions."). If a trial court observes conduct suggesting incompetence at the time of the waiver, it "may order the defendant to undergo a preliminary examination" to help determine if any further examination is necessary. Ariz. R. Crim. P. 11.2(c). These factors weigh against imposing a heightened competency standard.

¶37 The court of appeals held that "a prior finding of general competency to stand trial does not suffice . . . 'because it does not measure the defendant's capacity by a high enough standard.'" *Muhammad*, 250 Ariz. at 465 ¶ 16 (quoting *Cameron*, 146 Ariz. at 212). In so holding, the court of appeals explicitly relied on *Cameron*, which had applied the Ninth Circuit's higher standard of competency from *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973). *Id.* Significantly, however, the Supreme Court in *Godinez*

expressly rejected *Sieling*'s higher standard of competency. 509 U.S. at 397 (concluding "the Ninth Circuit . . . err[ed] in applying two different competency standards" in *Sieling*). We also repudiate *Sieling*'s higher standard of competency. Accordingly, the court of appeals erroneously relied on *Cameron*—a case applying *Sieling*'s two competency standards, which the Supreme Court has expressly rejected.

**¶38** For all these reasons, in cases where a defendant's competency has been put at issue, we conclude Arizona law does not require a finding of heightened competency for a jury-trial waiver. Instead, before such a defendant may waive a jury trial, the trial court must have concluded the defendant (1) is competent to stand trial, and "if a defendant has already been adjudicated competent, the court [may] rely on the record supporting that previous adjudication," *Moody*, 208 Ariz. at 443 ¶ 48 (citing *State v. Contreras*, 112 Ariz. 358, 360–61 (1975)), *see Godinez*, 509 U.S. at 401–02;[3] and (2) knowingly, voluntarily, and intelligently waived the right to a jury trial pursuant to Rule 18.1(b).

### C. Muhammad's Waiver of a Jury Trial

**¶39** We must now determine whether the trial court abused its discretion in concluding Muhammad knowingly, voluntarily, and intelligently waived his right to a jury trial and proceeding with a bench trial. For the reasons below, we conclude the trial court did not abuse its discretion.

**¶40** First, this Court has already recognized that "[u]nlike the waiver of assistance of counsel or plea of guilty, the waiver of a jury may well be in the defendant's best interests." *Decello*, 111 Ariz. at 49. The waiver of a jury trial "is more often than not a question of trial strategy in which the subjective evaluations of the attorney for the defendant play a

---

[3] As the Supreme Court explained in *Godinez*, a trial court is not required to make a competency determination in every case in which a defendant seeks to waive a constitutional right. 509 U.S. at 401 n.13. "As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Id.*

more important role than the discretion of the defendant." *Id.* Here, Muhammad was entitled to believe the jury-trial waiver was in his best interest. Before trial, counsel for Muhammad offered the reason why Muhammad chose to waive a jury trial: "with a name like Rahim Muhammad, [he] believed he could not get a fair trial in front of a largely white jury." *Supra* ¶ 13. In addition, Muhammad and his counsel both signed the "Waiver of Trial by Jury" form that described the specific rights Muhammad was waiving, a further indicator that Muhammad believed the waiver was in his best interest. *Supra* ¶ 12. And when they signed the form and explained the reason for the waiver to the trial court, neither Muhammad nor his counsel indicated Muhammad's judgment was clouded in any way.

¶41 Second, Muhammad repeatedly affirmed his decision to waive a jury trial. Muhammad signed the "Waiver of Trial by Jury" form after consulting with counsel two months before trial. *Supra* ¶ 12. And on the first day of trial, Muhammad reiterated several times on the record his decision to waive a jury trial. *Supra* ¶¶ 13–16.

¶42 Third, the trial court engaged in a proper personal colloquy with Muhammad, in compliance with Rule 18.1(b), before determining he had knowingly, intelligently, and voluntarily waived his right to a jury trial. *Supra* ¶¶ 13–15. Muhammad argues, however, that the trial court's questions during the colloquy were insufficient because they were designed to elicit only a "yes" or "no" response. *See supra* ¶ 13. Although asking questions that elicit more than a "yes" or "no" response may be a better practice, particularly when a defendant's competency has previously been called into question, Arizona law does not require the trial court to ask open-ended questions. *See* Ariz. R. Crim. P. 18.1(b). The trial court's questions were legally sufficient.

¶43 Fourth, there is no evidence Muhammad did not understand the consequences of waiving a jury trial. After Muhammad's participation in the restoration to competency program, he was re-evaluated and found competent to stand trial by two psychologists. *Supra* ¶¶ 7, 10. The trial court made repeated findings that Muhammad was competent to stand trial. *Supra* ¶¶ 8, 11. On the first day of trial, Muhammad confirmed he was taking medications that helped him "understand what's going on."

*Supra* ¶ 13.  He also confirmed his medications and the "voices" he heard did not affect his decision to proceed with a bench trial.  *Supra* ¶ 16.[4]  And his attorney apparently agreed with Muhammad's self-assessment by not correcting it.

**¶44**  Fifth, it was proper for the trial court to rely on its previous finding that Muhammad was competent to stand trial when it concluded his jury-trial waiver was knowing, voluntary, and intelligent.  *Supra* ¶¶ 8, 11, 15.  Where "a defendant has already been adjudicated competent, the court must be permitted to rely on the record supporting that previous adjudication."  *Moody*, 208 Ariz. at 443 ¶ 48.

**¶45**  Muhammad contends, however, that questions were raised about his jury-trial waiver in light of his testimony days later that he was "Moses," the victim was "satan," and Charles Ryan was "the pharaoh," as well as his counsel's comment that Muhammad is "on psychotropic medication" and "does hear voices."  *Supra* ¶ 18.  But a defendant who is mentally ill is not necessarily incompetent to stand trial, nor unable to exercise constitutional rights.  *See* A.R.S. § 13-4501(2) ("The presence of a mental illness, defect or disability alone is not grounds for finding a defendant incompetent to stand trial."); Ariz. R. Crim. P. 11.1(b) (to same effect).  A defendant is "incompetent to stand trial" only if "as a result of a mental illness, defect or disability a defendant is unable to understand the nature and object of the proceeding or to assist in the defendant's defense." § 13-4501(2); *see also* Ariz. R. Crim. P. 11.1(a)(2) (to same effect).[5]

---

[4]  Muhammad points out that when Dr. Cooper-Lopez asked him about the role of a jury, he responded, "I'm not too sure."  But this does not demonstrate the lack of a knowing, voluntary, and intelligent waiver. First, Dr. Cooper-Lopez and Dr. Vega both found him competent to stand trial.  *Supra* ¶¶ 7, 10.  Second, Muhammad gave this response before the role of a jury was explained to him via the "Waiver of Trial by Jury" form, *supra* ¶¶ 12, 14, and the trial court's personal colloquy with him, *supra* ¶ 13.

[5]  "Mental illness, defect, or disability" is defined as "a psychiatric or neurological disorder that is evidenced by behavioral or emotional symptoms, including congenital mental conditions, conditions resulting

¶46 Indeed, this Court has held that a defendant was competent to stand trial even though he was suffering from a paranoid personality disorder causing him to believe in a vast conspiracy involving his counsel, the police, the court, and several government officials. *State v. Glassel*, 211 Ariz. 33, 43–44 (2005). In *Glassel*, although the defendant's "condition worsened after the original competency hearing and . . . he had incorporated his new counsel into his conspiracy delusions," neither fact was "inconsistent with the trial court's original conclusion that [the defendant], although mentally ill, was nonetheless competent to stand trial." *Id.* at 44 ¶ 30; *see also Evans*, 125 Ariz. at 403–04 (concluding there was a competent waiver of counsel despite defendant having been "diagnosed as a paranoid schizophrenic").

¶47 A trial court "may order the defendant to undergo a preliminary examination" to assist in determining if any further examination is necessary. Ariz. R. Crim. P. 11.2(c); *see also* § 13-4503(B). We note that ordering such a preliminary examination is a best practice when the defendant's conduct raises questions about competency. But here, as in *Contreras*, the record does not show "some reasonable ground to justify another [examination or] hearing on facts not previously presented to the trial court in order for us to say that the trial judge abused his discretion in not ordering such [an examination or] hearing." 112 Ariz. at 360–61. Indeed, Muhammad "made no request for" an examination at the time of his jury-trial waiver or at any time during trial. *See id.* at 361. And furthermore, this record does not reveal any facts demonstrating that Muhammad was "unable to understand the nature and object of the proceeding or to assist in [his] defense," which is the standard for "incompetent to stand trial." [6] § 13-4501(2) (defining "incompetent to

---

from injury or disease, and developmental disabilities as defined in A.R.S. § 36-551." Ariz. R. Crim. P. 11.1(a)(1).

[6] Although Muhammad reported he felt "incoherent" and drowsy from medication on the first day of trial, he then stated he just needed "to sleep this off" and affirmed he would feel better after a break. *Supra* ¶ 17. When the parties reconvened three days later, neither Muhammad nor his counsel disclosed any symptoms or requested an examination. *Supra* ¶¶ 18, 36.

stand trial"); *see also Decello*, 111 Ariz. at 49 (concluding that *Westbrook* does not "mandate[] that a defendant who is represented by counsel and is competent to stand trial must be given, absent other facts, a further hearing by the court as to his competency to waive his right to a jury"). Thus, the trial court did not abuse its discretion in concluding Muhammad had knowingly, voluntarily, and intelligently waived his right to a jury trial.

### III. CONCLUSION

**¶48** In a case where a criminal defendant's competency has been put at issue, Arizona law does not require a specific finding of heightened competency for the defendant's waiver of a jury trial. Instead, before such a defendant may waive a jury trial, the trial court must have concluded the defendant (1) is competent to stand trial, and if a defendant has already been adjudicated competent, the court may rely on the record supporting that previous adjudication, and (2) knowingly, voluntarily, and intelligently waived the right to a jury trial, pursuant to Rule 18.1(b). The trial court did not abuse its discretion in accepting Muhammad's jury-trial waiver. We therefore affirm the trial court. We vacate ¶¶ 11–23 and 32 of the court of appeals' opinion.